J-S04036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS WOODRUFF | : | |
| | : | |
| Appellant | : | No. 1197 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 6, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002873-2020

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED FEBRUARY 25, 2022**

Appellant, Thomas Woodruff, appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County after a non-jury trial resulted in his conviction of Retail Theft, 18 P.S. 3929(a)(1).  Sentenced to 18 months' probation plus $599 restitution payable to Lowe's Hardware, Appellant challenges the sufficiency and weight of identification evidence offered against him and contends for the first time on appeal that his sentence of restitution is illegal for failing to specify a method of payment as is required under statute.  We affirm.

On November 3, 2019, at about 3:00 p.m., Evangelos Papadopoulos, a Lowe's Hardware asset protection manager with seven years' industry experience detecting both employee and customer retail theft, was sitting in

_____

[*] Former Justice specially assigned to the Superior Court.

his personal vehicle while on break when he observed what he considered suspicious behavior of a customer who had exited the store.  N.T. 4/6/21 at 11-13.

From about 40 feet away, Papadopoulos watched a man he would later identify as Appellant walk up to a Nissan Rogue that had just rolled to a stop and quickly shove a large box off the top of the shopping cart into the trunk while talking on a cell phone.  N.T. at 13-14.  Papadopoulos could see the box contained a pressure washer, an expensive item which Papadopoulos believed would be handled more carefully by someone who actually had purchased it. *Id*.

Appellant returned to the store, and a watchful Papadopoulos followed, quickly taking pictures of the Rogue's license plate and trunk along the way. N.T. at 15.  In-store video surveillance captured Appellant as he entered through the exit and made his way between the registers and the self-checkout before stopping to look in the tool area.  N.T. at 15, 24-25.

Papadopoulos discretely walked to within ten feet of Appellant and kept him in clear view for several minutes before moving to his office, where he remotely controlled a wall-mounted camera to zoom in closely on Appellant. N.T. at 28-30.  These in-person and surveillance observations, in particular, later would serve as the basis for Papadopoulos' photo array and in-court identifications of Appellant as the man who unlawfully removed the pressure washer from Lowes.  N.T. at 28, 30, 31-32.

Appellant eventually left the tool section with a Hitachi nail gun and a laser level in his shopping cart, and Papadopoulos went to alert the manager of the ongoing surveillance in case Appellant attempted to exit without paying. N.T. at 32-33. About three minutes later, Appellant abandoned his shopping cart and exited emptyhanded. N.T. at 34. Because Papadopoulos witnessed no theft and lacked the immediate opportunity to confirm whether the pressure washer had been stolen, he could not detain Appellant. N.T. at 37.

Papadopoulos completed his investigation by reviewing an electronic journal of sales that confirmed no pressure washer had been sold that day. N.T. at 38-39. Lowe's informed the Brookhaven Police of his report and provided them with surveillance video and photos of the Nissan Rogue's Delaware license plate.

Ascertaining that the vehicle was registered to Appellant, police assembled a photo array and met Papadopoulos at his Lowe's office, where he selected Appellant's photo without hesitation. N.T. at 40-41, 64, 67. A criminal complaint was filed charging Appellant with one count of retail theft.

Appellant's criminal trial turned on identification evidence. The Commonwealth relied primarily on Papadopoulos' eyewitness testimony—which included his surveillance video commentary—and his unequivocal photo array identification made without having seen Appellant since the November 3, 2019 alleged theft.

The defense, meanwhile, pressed a mistaken identity theory centered on the surveillance video's marginal picture quality, Papadopoulos' cautious

identification at the preliminary hearing, and Appellant's testimony that his passenger, Shane Diebold, entered the store while he remained in the driver's seat of his own vehicle, unaware of Diebold's ongoing crime.

In his defense, Appellant recounted that he was visiting a friend in Elkton, Maryland when Diebold, a "friend of a friend", offered to pay $40 if Appellant would drive him to the Brookhaven Lowe's, explaining the store was the closest one stocking an item his employer needed to complete a job. N.T. at 76-78. Appellant testified that he agreed to make the 80-minute round trip as a favor to a friend and because Diebold was paying him $40. N.T. at 87.

Turning to the video evidence offered against him, Appellant insisted that if he resembles the man depicted it is only because Diebold and he are somewhat alike in appearance. *Id*. Similarly defiant was Appellant's reply to the Commonwealth's observation that the man on the video and he share identical marks and scars on their heads. When asked if the court was to believe that Diebold likewise bears these same scars, Appellant responded, "Yes, that's correct, he does, yes. . . . Apparently he does. There's the video. Apparently, he does. I never looked at the back of his head, but . . . ." N.T. at 87-88.

Another pillar of the defense was the cross-examination of Papadopoulos, wherein counsel questioned the certainty of his September 24, 2020, preliminary hearing identification of Appellant. At the preliminary hearing, Papadopoulos was asked the following: "Okay. Do you see that person [the shoplifter] in the courtroom today?", Papadopoulos answered,

"Yes, from my best recollection it looks like the gentleman over there [identifying Appellant]." "Does that mean you are sure that's the gentleman that you saw?", the Commonwealth continued, to which he replied, "He fits the description of what I saw that day." N.T. at 53-54.

At trial, defense counsel asked if Papadopoulos would dispute that he sounded unsure when making this identification about the identification. N.T. at 53. Papadopoulos clarified that it was only by chance that he was at the magisterial district judge's office that day testifying on an unrelated case when he was asked on the spot to provide testimony in Appellant's preliminary hearing. Therefore, he explained, that even with many months having passed since the November 3, 2019, theft and the March 16, 2020 photo array, and having had no opportunity to review the surveillance video and his notes to refresh his memory, he still felt "90 percent" certain at the preliminary hearing of his identification of Appellant. N.T. at 52, 54-55, 60-61.

On redirect, Papadopoulos stated with complete certainty that Appellant was the shoplifting suspect he followed back into the store and surveilled from as close as 10 feet away. In contrast, he denied recognizing Diebolt from the defense exhibit photograph of him that he was shown. N.T. at 61-62.

In closing arguments, defense counsel emphasized circumstances that suggested Appellant would have remained behind the wheel of his car while Diebolt entered the store, and she asserted that a reliable identification of Appellant could not come from the grainy video image of a man that resembled Appellant but looked more like Diebolt.

The prosecutor agreed the video was not of optimal clarity, but it was clear enough to show specific scars identical to those visible on Appellant's head at trial. Notwithstanding any such video limitations, he emphasized, the pivotal evidence was supplied by Mr. Papadopoulos, whose definitive identifications at both the photo array and trial were based on his extended, close-range surveillance of Appellant in the store.

At the conclusion of trial, the court found Appellant guilty on the single count of retail theft and imposed a sentence of 18 months' probation and $599 restitution payable to Lowe's. On April 16, 2021, Appellant filed a post-sentence motion challenging the weight and sufficiency of the evidence. Following a May 12, 2021, hearing, the court entered its order of May 14, 2021 denying the motion. This timely appeal followed.

Appellant raises the following issues for our review:

1. Whether the evidence was insufficient to establish Appellant's identity as the person who took a pressure washer from Lowe's Hardware beyond a reasonable doubt in order to sustain his guilty verdict for retail theft, in violation of Appellant's federal and state constitutional rights?

2. Whether the trial court imposed an illegal sentence of restitution where it did not set forth the method of payment pursuant to 18 Pa.C.S. § 1106(c)(2)?

3. Whether the trial court erred in denying Appellant's motion for a new trial as the verdict was against the weight of the evidence, where the testimony of the Commonwealth's witness was of insufficient weight to support the retail theft conviction because it was plainly contradictory to the clear image on the video footage, in violation of Appellant's constitutional rights under the state and federal constitutions?

Appellant's brief at 5.

Appellant's first issue challenges the sufficiency of the evidence. Our standard of review for a sufficiency challenge is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Williams*, 255 A.3d 565, 578–79 (Pa. Super. 2021) (quoting *Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted)).

The crux of Appellant's sufficiency claim is that when one compares the still frame photograph from the surveillance video, introduced as Exhibit C-2, snippet #9, with the photograph of Appellant's license photo used in the photo array introduced in Exhibit C-4, "it is abundantly clear that they are not the same person." Appellant's brief, at 15. Instead, Appellant submits, the still frame more closely resembles the photograph of Shane Diebold admitted as

Defense Exhibit 2. At best, Appellant concludes, the evidence is equally consistent with Appellant's innocence as it is with his guilt, which establishes that the Commonwealth failed to prove Appellant's guilt beyond a reasonable doubt. *Id* at 16 (citing *In re J.B.*, 189 A.3d 390, 415 (Pa. 2018)).

For its part, the trial court opines in its Rule 1925(a) opinion that the shortcomings with the video did not preclude its use as supplementary evidence corroborating the credible testimony of Mr. Papadopoulos, who, the court noted, "immediately identified the photo as [depicting] the individual he had observed in the parking lot and the retail area of the Lowe's store in question and the same individual shown on the store video (N.T. p. 40)." Trial Court Opinion, 7/22/21, at 3.

On this point, the trial court observed:

that while the video footage appears to show someone closely resembling [Appellant] it would not, standing alone, be sufficient to establish [Appellant's] identity beyond a reasonable doubt. Nevertheless, the video when combined with the remaining testimony in the case, particularly that of Mr. Papadopoulos, who[m] the court found to be very credible, did convince this court sitting as the finder of fact that the evidence established [Appellant's] guilt beyond a reasonable doubt. Furthermore, the court found Appellant's testimony to be quite incredible.

Trial Court Opinion, 7/22/21 at 4.

Guided by our standard of review, we agree that the evidence, viewed in the light most favorable to the Commonwealth as the verdict-winner, was sufficient to establish Appellant's identity as the shoplifter in question. Mr. Papadopoulos was shown a photo array and, without hesitation, identified

Appellant as the suspect. He made two more confident in-court identifications of Appellant despite a significant passage of time and, in the case of the preliminary hearing, having no opportunity to review his records beforehand.

Also significant was Papadopoulos' testimony that he saw only the man who shoved the pressure washer into the Rogue and returned to the store, and not the driver. Moreover, he denied ever having seen Diebold, even after being shown Diebolt's photograph.

As for the surveillance video, the court stopped short of regarding either it or the still photos taken from it as dispositive proof of the shoplifter's identification. Nevertheless, it determined that, on balance, the depictions resembled Appellant sufficiently to align with Papadopoulos' eyewitness testimony implicating Appellant in the crime. After careful review of the record, we discern no abuse of discretion in this respect.

Therefore, contrary to Appellant's contention, the Commonwealth's evidence was neither equally consistent with his innocence as it was with his guilt, nor, more specifically, was the testimonial evidence undermined by the video evidence on the matter of identification. Accordingly, we find misplaced his reliance on *In re J.B.*, *supra*, and *Commonwealth v. Widmer*, 744 A.2d 645, 751 (Pa. 2000) (holding evidence is insufficient where it stands "in contradiction to the physical facts, in contravention to human experience and laws of nature[.]"). Accordingly, we conclude that Appellant's sufficiency claim is devoid of merit.

In Appellant's second issue, he contends that court violated the express terms of the restitution statute, 18 Pa.C.S.A. § 1106, by failing to specify a method of payment at sentencing. The record reflects that Appellant did not include this issue at sentencing or in his post-sentence motion before the trial court. Ordinarily, such a lapse would render an issue waived. *See*, *e.g.,* Pa.R.A.P. 302(a); *Commonwealth v. Castillo*, 888 A.2d 775 (Pa. 2005).

The claim before us, however, implicates the trial court's statutory authority to impose restitution and, thus goes to the legality of Appellant's sentence. *See Commonwealth v. Smith*, 956 A.2d 1029, 1032–33 (Pa. Super. 2008) (noting a claim that restitution was excessive challenges the discretionary aspects of the sentence, while a claim that restitution was inappropriate challenges the legality of the sentence)[1]. "Therefore, Appellant's failure to file post-sentence motions or object at the time of sentencing does not relieve the court or the Commonwealth of its obligations to comply with the statutory requirements of sentencing. Inquiry into the legality of sentence is a non-waivable matter." *Id.* (citing *Commonwealth v. Dinoia*, 801 A.2d 1254 (Pa. Super. 20012).

A trial court's authority to order restitution is codified at 18 Pa.C.S. § 1106. Section 1106 mandates, in relevant part, that when property has been

---

[1] We have recognized that "[i]n the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence." *Commonwealth v. Holmes*, 155 A.3d 69, 78 (Pa. Super. 2017) (*en banc*) (citation omitted).

unlawfully obtained as a direct result of a crime, "the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S. § 1106(a). Subsection (c)(1) states full restitution is mandatory "[r]egardless of the current financial resources of the defendant." *Id.* at § 1106(c)(1)(i).

Relevant to Appellant's claim, subsection (c)(2) further provides:

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

*Id.* at § 1106(c)(2)(i) and (ii).

Consistent with Section 1106, our jurisprudence has recognized that a trial court "may not impose a general order of restitution at sentencing and then 'work out the details' and amounts at a later date." *Smith.* at 1033 (citation omitted).

The whole of Appellant's argument on this issue states, "Instantly, at sentencing, the trial court failed to specify the method of payment of restitution, *i.e.*, whether it should be paid in one lump sum, by monthly payments, or by some other payment plan. The restitution should be vacated

as it was imposed in violation of the requirements set forth under §
1106(c)(2)." Appellant's brief, at 20.

The record reflects that the trial court's sentencing order imposed upon
Appellant 18 months' probation and directed "you'll pay the restitution in the
amount of $599." N.T. at 95. Contrary to Appellant's summary argument,
although the court never uttered the words "lump sum," it is implicit in the
court's words that Appellant was to pay the $599 at once.

Because Appellant failed to indicate in his Rule 1925(b) statement what
aspect of Section 1106 the court allegedly violated, the court was unable to
predict Appellant's particular claim and respond meaningfully. Nevertheless,
in consideration of the facts of the case, the amount of restitution involved,
and the court's direct language, we find that Appellant was ordered to pay
$599 forthwith to Lowe's. We, therefore, find no merit to Appellant's claim.

Finally, Appellant asserts that the court's verdict went against the weight
of the evidence when the court unduly attributed great importance and
credence to the identification testimony of Mr. Papadopoulos. Our standard
of review for a weight of the evidence claim is well-settled:

> The law pertaining to weight of the evidence claims is well-settled.
> The weight of the evidence is a matter exclusively for the finder
> of fact, who is free to believe all, part, or none of the evidence
> and to determine the credibility of the witnesses. A new trial is
> not warranted because of a mere conflict in the testimony and
> must have a stronger foundation than a reassessment of the
> credibility of witnesses. Rather, the role of the trial judge is to
> determine that notwithstanding all the fact, certain facts are so
> clearly of greater weight that to ignore them or to give them equal
> weight with all the facts is to deny justice. On appeal, our purview

is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Williams*, 255 A.3d 565, 580 (Pa. Super. 2021) (quoting

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015).

(quotation marks and citations omitted)).

Upon close inspection of Appellant's weight argument, however, we note that it largely reiterates the failed argument made in his sufficiency claim, that is, that the Commonwealth's own video evidence contradicts Papadopoulos' testimony with respect to the identity of the shoplifter. For the reasons expressed in disposition of Appellant's sufficiency claim, we dismiss Appellant's weight claim as equally meritless.

Judgment of sentence AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2022

- 13 -